UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

| | |
|---|---|
| John James Boland, | Case Type: Civil |
| Plaintiff, | Case File No.: |
| v. | |
| Officers Jake Smith, and Olga Voronchak, both individually and in their official capacities as police officers for the City of South Saint Paul, | **COMPLAINT AND JURY DEMAND** |
| Defendants. | |

_____

Plaintiff John Boland, for his complaint against the above-named Defendants, states and alleges as follows:

1. This is an action for money damages for injuries sustained by John Boland, as a result of the violations by Defendants of Boland's clearly established rights under the Constitution of the United States, federal statutes, and Minnesota's common law. Mr. Boland demands that this case be tried to a jury.

## **PARTIES**

2. At all times relevant to this action, Boland was a citizen of the United States of America and a resident of the State of Minnesota and the County of Dakota.

3. At all times relevant to this action, Defendants were employed by and acting, under color of law, as agents of the South Saint Paul Police Department and the City of South St. Paul.

1

4.     Mr. Boland sues the Defendant Officers in both their official and individual capacities.

5.     At all times relevant to this action, the City of South Saint Paul was and is a duly incorporated municipal corporation and the employer and principal of the Defendants.

## JURISDICTION AND VENUE

6.     Mr. Boland brings this action pursuant to the Fourth and Fourteenth Amendments to the Constitution of the United States, 42 U.S.C. §§ 1983 and 1988, and Minnesota's common law, and 28 U.S.C. §§ 1331 and 1343(3). These statutory and constitutional provisions confer original jurisdiction of this Court over this matter.

7.     Venue is proper under 28 U.S.C. §§ 1391(b)(1) and (2).

## FACTUAL ALLEGATIONS

8.     On or about November 27, 2021, Mr. Boland was at his home in South Saint Paul, with his tenant, DKB.

9.     DKB's daughter, KKB, had been storing personal items in Boland's basement, which she removed most of on the date in question. An argument arose between the two. It should be noted, KKB is much younger, larger, and stronger physically than Mr. Boland. DKB then called the police.

10.     Defendant Voronchak responded to that call, and upon arrival, defused the situation, de-escalated the parties, and spoke with all involved. Mr. Boland, DKB, and KKB, all stated they did not want to press charges or have anyone arrested. Mr. Boland

stated he simply wanted KKB to leave his property. The situation had been calmed down and resolved. That is, until Defendant Smith arrived.

11. Defendant Smith arrived and immediately instructed Mr. Boland to remove his hands from his pockets. Boland complied immediately, and said "get her out of here," pointing to KKB. Officer Smith then immediately moved to arrest Mr. Boland without conducting any investigation of his own or discussing Voronchak's investigation.

12. Defendant Voronchak had an opportunity to intervene and stop Defendant Smith from unreasonably and unnecessarily escalating the situation into a use of force immediately upon his arrival. Defendant Voronchak failed to intervene, and instead aided and abetted Defendant Smith in his gratuitous and unnecessary use of force against Mr. Boland. This conduct violates the Fourth Amendment to the United States Constitution.

13. Mr. Boland was confused by Smith's immediate decision to arrest Boland after Defendant Voronchak had already resolved the situation. Mr. Boland was given no opportunity to comply before Defendants Smith and Voronchak then picked him up and body slammed him to the concrete, face first.

14. Below are two sequential photos of the take-down maneuver used by both Defendants. As can be seen in these photos, Defendant Voronchak held Mr. Boland's arms behind his back as Defendant Smith picked Boland's body up from the knees and threw Mr. Boland to the ground.





15. Mr. Boland's head struck the concrete without mitigation. At the same time, Defendants let go of Mr. Boland's arms and legs, allowing the full force of the maneuver to be exerted on his head by the concrete. The below photo captures that moment:



16.     Mr. Boland was knocked unconscious, and began to immediately struggle to breathe. The Defendants quickly realized that they had likely caused Mr. Boland severe and permanent injuries, but still handcuffed him before administering any aid. Because Defendants held Mr. Boland's arms, he was unable to protect his head from the concrete

when the officers piledrove him headfirst into the driveway. Below is a photo of Mr. Boland unconscious, as he appeared immediately after Defendants rolled him over, handcuffed.



17.     Defendants used deadly force against Boland by intentionally applying force in a manner which was very likely to cause Mr. Boland's head to strike the concrete. It is well known to even lay persons that an unmitigated blow to the head from a blunt force object or paved ground can easily kill or cause great bodily harm. Mr. Boland did not meaningfully resist the officers before the use of excessive use of force. Mr. Boland had no weapons. He complied with the directive to remove his hands from his pockets, and was

given no opportunity to comply with any further instructions. Mr. Boland presented no threat to the officers at the time Defendants decided to use force against him.

18. Defendants inaccurately reported the use of force, writing "While holding on to John's right arm, he was restrained and fell on the ground." Defendants further falsified reports to cover up their misconduct, including writing "John fell to the ground face down." Defendants' contemporaneous oral statements to EMT staff, as well as the video evidence, clearly belie any claim that the injury had somehow been self-inflicted.

19. Mr. Boland immediately "had agonal breathing and foaming at the mouth." Mr. Boland was bleeding from the head and struggling greatly to breathe. It was apparent to everyone present that he had been seriously injured. As his condition worsened on the scene, Defendants began to attempt chest compressions:



20. Mr. Boland was eventually taken to the hospital for his injuries by emergency medical staff.

21. As a result of the severe and traumatic brain injury inflicted by Defendants that day, Mr. Boland's life was forever changed. He can no longer work. His personality has changed drastically. He has vision problems, a lack of balance, he is unable to maintain relationships with friends and family, he has devastating memory loss, anxiety, depression, and cognitive impairment. The use of excessive force by Defendants in this incident has cost Mr. Boland everything important in life, and has robbed him of all happiness and enjoyment for the remainder of his life.

22. Mr. Boland suffered a closed head injury/traumatic brain injury with loss of consciousness, post-concussion syndrome, subarachnoid hemorrhage (SAC), small frontal intraparenchymal hemorrhage (IAP), facial lacerations and severe bruising, emotional distress, loss of income and future earning capability, and other damages.

23. Since the incident, Mr. Boland has been largely unable to live a normal life or enjoy life as he once did. His entire life, family structure, routine, personality, and likely life expectancy have all been irreparably altered and harmed by the Defendants' decision to throw him head first to the ground while holding his arms behind his back. Below are additional photos from his partial recovery:



24. Mr. Boland received a petty misdemeanor disorderly conduct and a fine as a result of this incident. He was not convicted of any crimes.

### COUNT 1 –EXCESSIVE FORCE
### IN VIOLATION OF 42 U.S.C. SECTION 1983
### *All Defendants*

Plaintiff re-alleges paragraphs 1 through 24 and further states:

25. Boland was not a threat to officers, had complied, was given no additional opportunity to comply, had no weapons, caused no injury to the officers, and was not the suspect of a felony at the time deadly force was used against him. The force used was therefore all excessive because it was not reasonably necessary to achieve a legitimate law enforcement purpose. This excessive use of force in violation of the Fourth and Fourteenth

Amendments to the United States Constitution was the direct and proximate cause of the injuries Boland suffered.

26. Defendants' actions were the direct and proximate cause of the constitutional violations and Boland's injuries and damages. Defendants are also liable for Plaintiff's attorney's fees, costs, and disbursements in prosecuting this action, pursuant to 42 U.S.C. § 1988, and other law.

## COUNT 2 –FAILURE TO INTERVENE IN VIOLATION OF 42 U.S.C. SECTION 1983
### *Defendant Voronchak*

Plaintiff re-alleges paragraphs 1 through 26 and further states:

27. Defendant Voronchak had a meaningful opportunity to intervene to halt Defendant Smith from unlawfully arresting, detaining, and using excessive force against Mr. Boland. Defendant Voronchak failed to do so, and thus failed to intervene to stop the constitutional violations, instead assisting Defendant Smith in ensuring Mr. Boland's injuries would be as severe as possible by holding Boland's hands behind his back as Smith threw him to the concrete. This excessive use of force in violation of the Fourth and Fourteenth Amendments to the United States Constitution was the direct and proximate cause of the injuries Boland suffered.

28. Defendant's actions were the direct and proximate cause of the constitutional violations and Boland's injuries and damages. Defendant is also liable for Plaintiff's attorney's fees, costs, and disbursements in prosecuting this action, pursuant to 42 U.S.C. § 1988, and other law.

## COUNT 3 – FALSE ARREST
## IN VIOLATION OF 42 U.S.C. SECTION 1983
### *All Defendants*

Plaintiff re-alleges paragraphs 1 through 28 and further states:

29. At the time Defendant Smith made the decision to arrest Mr. Boland, there was not arguable probable to arrest him for any crime. Furthermore, Defendant Voronchak had sufficient knowledge to know this, and thus the collective knowledge doctrine does nothing to justify Defendant Smith's decision to immediately arrest and go "hands on", nor Defendant Voronchak's subsequent decision to aid and abet Smith rather than intervene on behalf of Boland, as the Fourth Amendment required. This unlawful arrest by both Defendants in violation of the Fourth and Fourteenth Amendments to the United States Constitution was the direct and proximate cause of the injuries Boland suffered.

30. Defendants' actions were the direct and proximate cause of the constitutional violations and Boland's injuries and damages. Defendants are also liable for Plaintiff's attorney's fees, costs, and disbursements in prosecuting this action, pursuant to 42 U.S.C. § 1988, and other law.

## COUNT 4 – BATTERY
### *All Defendants*

Plaintiff re-alleges paragraphs 1 through 30 and further states:

31. Defendants committed the tort of battery by using force against Boland's person, without consent.

32.     Defendants' battery of Boland was the direct and proximate cause of Boland's injuries and damages.

33.     The South Saint Paul Police Department and City of South Saint Paul are jointly and severally liable for the actions of the Defendant Officers under the doctrines of agency and *respondeat superior*.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against the Defendants as follows:

a.  awarding Plaintiff compensatory damages against Defendants, and each of them, jointly and severally, in the amount of $5,000,000.00;

b.  awarding Plaintiff punitive damages on Counts 1, 2, and 3, pursuant to *Smith v. Wade*, 461 U.S. 30 (1983).

c.  awarding Plaintiff all of his costs and disbursements, including reasonable attorney's fees as allowed by law, including 42 U.S.C. § 1988;

d.  Plaintiff demands trial by jury as to all factual issues; and

e.  granting such other relief as the Court may deem just and equitable.

Dated: October 24, 2023

/s/ Paul Applebaum
Paul Applebaum (223098)
**APPLEBAUM LAW FIRM**
First National Bank Building
332 Minnesota Street, Suite W-1610
St. Paul, Minnesota 55101
(PH) (651) 222-2999
(FAX) (651) 223-5179
PAUL@APPLEBAUMLAWFIRM.COM

13

/s/ Andrew M. Irlbeck
Andrew M. Irlbeck, #392626
First National Bank Bldg.
332 Minnesota St., Ste. W1610
St. Paul, MN 55101
Phone: 612-986-3895
Fax: 651-223-5179
andrew@irlbecklaw.com

*/s/ Megan M. Curtis*
Megan M. Curtis #0393601
1st National Bank Building
332 Minnesota Street,
Suite W1610
Saint Paul, Minnesota 55101
Phone: (612) 750-4688
mc@megancurtislaw.com

***Attorneys for Plaintiff John Boland***